# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

In re

GLENN JAMES SNELSON, JR.
a/k/a JIMMY SNELSON

        Debtor

Case No. 04-30425

DEAN B. FARMER, TRUSTEE

        Plaintiff

v.

GREEN TREE SERVICING LLC

        Defendant

Adv. Proc. No. 05-3043

## MEMORANDUM ON
## MOTIONS FOR SUMMARY JUDGMENT

**APPEARANCES:**    HODGES, DOUGHTY & CARSON, PLLC
    Keith L. Edmiston, Esq.
    Post Office Box 869
    Knoxville, Tennessee 37901-0869
    Attorneys for Plaintiff

    KENNEY, SOLOMON & MEDINA, P.C.
    John A. Medina, Esq.
    3675 Crestwood Parkway
    Suite 500
    Duluth, Georgia 30096
    Attorneys for Defendant

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

On March 11, 2005, the Chapter 7 Trustee, Dean B. Farmer, filed the Complaint initiating this adversary proceeding, seeking to avoid, pursuant to 11 U.S.C.A. § 544 (West 2004), a lien on the Debtor's mobile home held by the Defendant, Green Tree Servicing LLC. Additionally, the Trustee seeks to recover the value of the property for the benefit of the Debtor's estate under 11 U.S.C.A. § 550 (West 2004).[1]

Presently before the court are Green Tree's Motion for Summary Judgment (Defendant's Motion) and the Plaintiff's Motion for Summary Judgment (Plaintiff's Motion), both filed on August 1, 2005. As required by E.D. Tenn. LBR 7007-1 and E.D. Tenn. LBR 7056-1, the Defendant's Motion is accompanied by a Statement of Undisputed Material Facts and a Brief in Support of Green Tree's Motion for Summary Judgment, and the Plaintiff's Motion is accompanied by Plaintiff's Statement of Material Facts Not in Dispute in Support of Plaintiff's Motion for Summary Judgment and a Memorandum in Support of Plaintiff's Motion for Summary Judgment.[2]

The Defendant's Motion is supported by the Certificate of Title Record, as of July 29, 2005, on file with the Tennessee Department of Safety, Title & Registration Department

---

[1] Section 550 concerns recovery of property from a transferee for the benefit of the Debtor's bankruptcy case. *See* 11 U.S.C.A. § 550(a). In the context of lien avoidance, the relevant statute is § 551, which provides that "[a]ny transfer avoided under section . . . 544 . . . of this title . . . is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C.A. § 551 (West 2004); *see also Henden v. G.E. Capital Mortgage Servs. (In re Carpenter)*, 266 B.R. 671, 676 (Bankr. E.D. Tenn. 2001) ("Avoidance and recovery are recognized in the Sixth Circuit as two distinct remedies. . . . [T]he Plaintiff may avoid the Defendant's security interest under § 544(a). Once that occurs, the interest is preserved for the estate's benefit . . . by § 551 . . . . These events are meaningful in and of themselves and necessitate no additional 'recovery' by the Plaintiff.").

[2] Both parties filed responses to the other's Motion for Summary Judgment and Statement of Undisputed Material Facts, additionally required by E.D. Tenn. LBR 7007-1 and E.D. Tenn. LBR 7056-1.

(Department of Safety), relating to the Debtor's 28x44 Fleetwood Highland mobile home (collectively, Certified Records), and the Affidavit of Stacie French, Bankruptcy Manager with the Defendant, identifying the following exhibits: (A) a Manufactured Home Retail Installment Contract and Security Agreement dated July 17, 1997, between the Debtor and his wife, Judy B. Snelson, (collectively Snelsons) and Prestige Homes, Inc., (Contract) for the purchase of the Fleetwood Highland mobile home (Mobile Home) for $29,126.98; (B) an Application for Certificate of Title and Registration dated July 17, 1997 (Application for Certificate of Title); (C) a copy of check number 46016482 in the amount of $8.00 from the Defendant to the Knox County Court Clerk for the title fee; (D) the Manufacturer's Statement or Certificate of Origin to a Manufactured Home (Manufacturer's Statement); (E) the Bill of Sale dated July 17, 1997 (Bill of Sale), between Prestige Homes, Inc. and the Snelsons, for the purchase of a 1997 Fleetwood Highland mobile home, Vehicle Identification Number (VIN) TNFLV26AB90331-HL13; (F) a letter dated July 28, 1997, to the Snelsons from the Defendant, stating that the model year 1997 was incorrectly noted on the Contract, rather than the actual model year of 1998 (Correction Notice); and (G) Certificate of Title number 54712890, issued by the State of Tennessee on August 26, 1997, evidencing the Defendant's first security interest as of August 18, 1997, in a 1998 Fleetwood mobile home, VIN TNFLV26AB90331HL21 (Certificate of Title).  In support of the Plaintiff's Motion, the Plaintiff relies upon the same documentation.

This is a core proceeding.  28 U.S.C.A. § 157(b)(2)(K) (West 1993).

3

# I

The parties agree upon the following undisputed material facts, which are supported by the Affidavit of Ms. French and the exhibits attached thereto. On July 17, 1997, the Snelsons executed the Contract with Prestige Homes, Inc. for the purchase of the 28x44 Fleetwood Highland mobile home. FRENCH AFF. ¶ 4; Ex. A. According to the Contract and the Bill of Sale, the model year of the Mobile Home was 1997, and its VIN was TNFLV26A&B90331-HL13. FRENCH AFF. ¶¶ 4, 7; Ex. A; Ex. E. The Contract granted a security interest in the Mobile Home, as described therein, to the Defendant, the assignee. FRENCH AFF. Ex. A. The Defendant then prepared the Application for Certificate of Title which was executed by the Snelsons, requesting notation of its lien upon a "1998 Highland Park Fleetwood" mobile home, VIN TNFLV26A&B90331-HL13. FRENCH AFF. ¶¶ 5-6; Ex. B. On August 26, 1997, the Department of Safety issued the Certificate of Title, noting the Snelsons as owners of a "1998 Fleetwood 440 mobile home, VIN TNFLV26AB90331HL21." FRENCH AFF. ¶ 9; Ex. G. The Certificate of Title also lists the "Date of First Security Interest" as August 18, 1997. FRENCH AFF. Ex. G.

The Defendant discovered that the Contract incorrectly stated the Mobile Home's model year as 1997, and on July 28, 1997, it sent the Correction Notice to the Snelsons, notifying them that the correct model year for the Mobile Home was 1998. FRENCH AFF. ¶ 8; Ex. F. The Snelsons were requested to acknowledge the correction of the year model by signing the Correction Notice and then returning it to the Defendant. The Correction Notice was not executed by either of the Snelsons. *See* FRENCH AFF. Ex. F.

The Debtor filed the Voluntary Petition commencing his Chapter 7 bankruptcy case on January 29, 2004,[3] and the Defendant filed a Proof of Claim in the amount of $25,311.17 on February 11, 2004, attaching the Contract and the Certificate of Title as proof of its security interest.[4] The Plaintiff filed the Complaint initiating this adversary proceeding on March 11, 2005, averring that, based upon the documentation attached to the Proof of Claim, the Defendant does not have a valid security interest in the Mobile Home, or in the alternative, that its security interest is not properly perfected, such that the Defendant's interest in the Mobile Home is subordinate to that of the Plaintiff as Chapter 7 trustee. In its Answer, the Defendant denied the Plaintiff's allegations and opposed his requested relief. The Motions for Summary Judgment followed.

## II

Summary judgment is appropriate, pursuant to Federal Rule of Civil Procedure 56, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (applicable to adversary proceedings by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure). When deciding a motion for summary judgment, the court does not

---

[3] Mrs. Snelson did not file for bankruptcy.

[4] The Plaintiff's Statement of Material Facts Not in Dispute in Support of Plaintiff's Motion for Summary Judgment, which was undisputed by the Defendant for purposes of summary judgment, erroneously stated that the Defendant's Proof of Claim was filed in 2005, rather than in 2004; however, the Proof of Claim attached as Exhibit A to the Complaint evidences the correct date.

weigh the evidence to determine the truth of the matter asserted, but instead, simply determines whether a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).

The moving party bears the initial burden of proving that there are no genuine issues of material fact, thus entitling it to judgment as a matter of law. *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). The burden then shifts to the nonmoving party to produce specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986) (citing FED. R. CIV. P. 56(e)). The nonmoving party must cite specific evidence and may not merely rely upon allegations contained in the pleadings. *Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). The facts and all resulting inferences are viewed in a light most favorable to the non-moving party, *Matsushita*, 106 S. Ct. at 1356, and the court will decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S. Ct. at 2512. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 106 S. Ct. at 2510.

The parties do not dispute the material facts, and the court agrees that there are no genuine issues of material fact. Therefore, the only question before the court, based upon the facts and the exhibits in the record, is whether the Plaintiff or the Defendant is entitled to judgment as a matter of law. The Plaintiff avers that he is entitled to summary judgment

because there is no valid security agreement concerning the Mobile Home between the Snelsons and the Defendant, or in the alternative, because the Defendant's lien is not properly perfected. The Defendant argues that its security agreement with the Snelsons is valid and that its lien is properly perfected.

### III

The filing of a voluntary petition under Chapter 7 of the Bankruptcy Code constitutes an order for relief and a debtor's bankruptcy estate, consisting of all legal and equitable interests of the debtor in property, is created. 11 U.S.C.A. § 301 (West 2004); 11 U.S.C.A. 541(a) (West 2004). Additionally, at the commencement of a Chapter 7 case, a trustee possessing various statutory duties and powers is appointed to administer the bankruptcy estate. *See* 11 U.S.C.A. § § 323(a), 701, 702(d), 704 (West 2004). Among those powers is a trustee's ability to avoid transfers of property of the debtor's bankruptcy estate. These avoidance, or "strong arm" powers, are derived from 11 U.S.C.A. § 544(a), which provides as follows:

> (A) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect

>to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
>(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C.A. § 544(a) (West 2004). "The status which [§ 544(a)] confers upon the trustee in bankruptcy is that of 'the ideal creditor, irreproachable and without notice, armed cap-a-pie with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by legal or equitable proceedings.'" *Lancaster v. Hurst (In re Hurst)*, 27 B.R. 740, 742 (Bankr. E.D. Tenn. 1983) (quoting *In re Waynesboro Motor Co.*, 60 F.2d 668, 669 (S.D. Miss. 1932)).

The creation of a lien constitutes a "transfer" under the Bankruptcy Code's definition, which includes "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C.A. § 101(54) (West 2004); *see also Hendon v. Gen. Motors Acceptance Corp. (In re B & B Utils., Inc.)*, 208 B.R. 417, 421 (Bankr. E.D. Tenn. 1997). The "strong arm" provisions allow a trustee "to step into the shoes of the hypothetical lien creditor and to avoid any unperfected security interests." *In re Tibble v. Huntington Nat'l Bank (In re Fasick)*, 234 B.R. 891, 893 (W.D. Mich. 1999). In other words, "[i]f the holder of a security interest in the debtor's property fails to perfect that interest prior to the filing of the

bankruptcy, the trustee can avoid that interest, reducing the holder to the status of an unsecured creditor." *Walker v. Elam (In re Fowler)*, 201 B.R. 771, 779 (Bankr. E.D. Tenn. 1996).

Although the rights and powers acquired by the trustee are vested by virtue of the Bankruptcy Code, they are determined through applicable state law. *See Waldschmidt v. Dennis (In re Muller)*, 185 B.R. 552, 554 (Bankr. M.D. Tenn. 1995). Therefore, whether or not the Defendant holds a valid and properly perfected security interest in the Mobile Home is determined by Tennessee law. *See B & B Utils.*, 208 B.R. at 421.

**A**

"[T]he security agreement creates the security interest and is the basic contract between the parties with respect to the security interest." *Lee v. Loving Homes, Inc. (In re Loving Homes, Inc.)*, 238 B.R. 388, 398 (Bankr. E.D. Tenn. 1999). Security interests are governed by the Uniform Commercial Code, as adopted in Tennessee. *See* TENN. CODE ANN. § § 47-9-101, -102 (1997). As it relates to this case, a security interest is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." TENN. CODE ANN. § 47-1-201(37)(A) (1997). "'Security agreement' means an agreement which creates or provides for a security interest[.]" TENN. CODE ANN. § 47-9-105(1)(*l*) (1997).

9

When the Contract was executed in July 1997, section 47-9-203 of the Tennessee Code Annotated read, in material part, as follows:

> (1) [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:
>
>> (a) . . . the debtor has signed a security agreement which contains a description of the collateral . . .; and
>>
>> (b) the value has been given; and
>>
>> (c) the debtor has rights in the collateral.
>
> (2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching.

TENN. CODE ANN. § 47-9-203 (1997). Nevertheless, a security agreement need not be formal to be effective, *Still v. Peoples Nat'l Bank (In re Baker)*, 54 B.R. 743, 745 (Bankr. E.D. Tenn. 1985), and "[w]hen determining the extent of a security interest, courts may consider [not only] the security agreement [but also] any documents to which it refers." *Loving Homes*, 238 B.R. at 393.

The primary area of contention between the Plaintiff and the Defendant with respect to the validity of the security agreement is the description of the collateral. The Plaintiff asserts that the Contract incorrectly identifies the Mobile Home's model year as 1997 rather than 1998, and that mistake invalidates the Defendant's security interest in the Mobile Home. Additionally, the Plaintiff argues that because the Snelsons did not acknowledge the Correction Notice, they did not authenticate the security interest in the 1998 Mobile Home.

10

"A description of the collateral in the security agreement is required not only for the protection of the debtor and creditor but also for the purpose of distinguishing the collateral from the collateral claimed by other secured creditors." *In re Tenpenney*, 64 B.R. 217, 220 (Bankr. E.D. Tenn. 1986). As it relates to this case, the "[s]ufficiency of description" for the Mobile Home is set forth as follows: "[f]or the purposes of this chapter any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." TENN. CODE ANN. § 47-9-110 (1997). Moreover, the courts have generally interpreted this section loosely, based upon the Uniform Commercial Code's directive that "[u]nless displaced by the particular provisions of chapters 1-9 of this title, the principles of law and equity, including the law merchant and the law relative to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." TENN. CODE ANN. § 47-1-103 (1997).

Here, the Contract identifies the Mobile Home not only by a model year, but also by its size, make, model, and its VIN (or Serial Number), all of which match those located on the Application for Certificate of Title dated July 17, 1997, executed by the Snelsons, as well as the Bill of Sale and the Manufacturer's Statement. FRENCH AFF. ¶¶ 6, 7; Ex. A; Ex. B; Ex. D; Ex. E. The description contained in the Contract is sufficient to identify and distinguish the Mobile Home purchased by the Snelsons from other property that they owned. Irrespective of the mistakenly listed model year, the Contract created a valid security interest in favor of the Defendant in the Mobile Home.

11

Moreover, the Correction Notice sent to the Snelsons served as a supplement to the Contract, which could be amended or modified in writing at any time by the Defendant. *See* FRENCH AFF. Ex. A at ¶ 13. Even though the Defendant asked the Snelsons to sign and return the Correction Notice, the Snelsons' failure to do so did not invalidate the security agreement created by the Contract. The Snelsons did sign the Application for Certificate of Title, also dated July 17, 1997, which lists the Mobile Home's model year as "1998." The Snelsons knew that they were purchasing a new, rather than a used mobile home, in July 1997, and the fact that they did not execute the Correction Notice and return it to the Defendant does nothing to alter their duties and rights with respect to the Contract and/or the Mobile Home. The Contract, along with the Application for Certificate of Title, formed a valid security agreement between the Defendant and the Snelsons, whereby the Defendant was granted a valid security interest in the Mobile Home.

**B**

The remaining question is whether the Defendant's security interest in the Mobile Home, while valid, was also properly perfected on January 29, 2004, the date that the Debtor filed his bankruptcy petition. Although the Uniform Commercial Code governs security interests, in Tennessee, perfection of a security interest in a motor vehicle or a mobile home, is governed by title 55, chapter 3 of the Tennessee Code Annotated. *See* TENN. CODE ANN. § 47-9-302(3)(b) (1997) ("The filing of a financing statement otherwise required by this chapter is not . . . effective to perfect a security interest in property subject

to: . . . statutes of this state which . . . require indication on a certificate of title of such security interests . . . [.]"); TENN. CODE ANN. § § 55-1-103, -105 (1997) ("Motor vehicle means any mobile home or house trailer as defined in § 55-1-105[,]" as follows: "'[m]obile home or house trailer' means any vehicle or conveyance, not self-propelled, designed for travel upon the public highways, and designed for use as a residence[.]").

Specifically, "[n]o . . . lien or encumbrance . . . upon a registered vehicle . . . shall be valid against the creditors of an owner or subsequent purchaser or encumbrancers, until the requirements of this section and § 55-3-126 have been complied with, unless such creditor, purchaser, or encumbrancer has actual notice of the prior lien." TENN. CODE ANN. § 55-3-125 (1997). Section 55-3-126, as it existed in 1997, provides in material part:

> (a)  A lien or security interest in a vehicle of the type for which a certificate is required shall be perfected and shall be valid against subsequent creditors of the owner, subsequent transferees, and the holders of security interest and liens on the vehicle by compliance with this chapter.
>
> (b)(1)  A security interest or lien is perfected by delivery to the division of motor vehicles or the county clerk of the existing certificate of title, if any, title extension form, or manufacturer's statement of origin and an application for a certificate of title containing the name and address of the holder of a security interest or lien with vehicle description and the required fee.
>
>    (2) The security interest is perfected as of the time of its creation if the delivery is completed within twenty (20) days thereafter . . . . Otherwise, a security interest is perfected as of the date of delivery to the county clerk or the division of motor vehicles.
>
> . . . .
>
> (c)  When the security interest is perfected as provided for in this section, it shall constitute notice of all liens and encumbrances against the vehicle described therein to creditors of the owner, to subsequent purchasers and encumbrances . . . . Constructive notice shall date from the time of first

13

>   delivery of the request for the notation of the lien or encumbrance upon the certificate of title by either the division or the county clerk acting as agent for the division, as shown by its endorsements of the date of delivery on such document.
>
>   (d)  The method provided in this section and § 55-3-125 of obtaining a lien or encumbrance upon a motor vehicle, mobile home, house trailer or other mobile structure, whether or not taxes as real property, subject to the provisions of chapters 1-6 of this title relative to the issuance of certificates of title, shall be exclusive except as to liens depending upon possession and the lien of the state for taxes . . . .  It is the intent of this section that any mortgage, trust receipt or other similar instrument of indebtedness required by chapters 1-6 of this title shall be perfected by delivery and then noted upon the certificate of title only, and shall not be required to be made a public record elsewhere.

TENN. CODE ANN. § 55-3-126 (1997).  In essence, by virtue of these statutes,

>   Tennessee is still a notation state.  That is, a security interest in a motor vehicle is not perfected until a notation of the lien is made on the certificate of title.  When such notation is made, the date of perfection dates from the time of delivery [of the application] to the county clerk [or the Department of Motor Vehicles].

*Still v. First Tenn. Bank, N.A.*, 900 S.W.2d 282, 285 (Tenn. 1995).

Based upon these statutes, as well as the body of case law analyzing the issue, there is no question that, in Tennessee, the sole method of perfecting a security interest in a motor vehicle is by notation of the lien on the certificate of title.  *See Farmer v. LaSalle Bank (In re Morgan)*, 291 B.R. 795, 802 (Bankr. E.D. Tenn. 2003).  Even in cases where an erroneous notation occurred through a clerical mistake of someone other than the creditor, courts have held that the security interests were not perfected.  *See e.g., Schulman v. Ford Motor Credit Co. (In re Leach)*, 206 B.R. 903, 905-07 (Bankr. M.D. Tenn. 1997) (mistakenly listing one creditor instead of another on certificate of title was "fatal" as to perfection); *Newton v. First*

14

*Am. Nat'l Bank (In re Webb)*, 106 B.R. 517, 521-22 (Bankr. E.D. Tenn. 1989) (even though the dealership made a clerical error on the application for notation of lien, the creditor was still unperfected under Tennessee law because another bank was listed as lienholder); *Waldschmidt v. Smith (In re York)*, 43 B.R. 36, 37 (Bankr. M.D. Tenn. 1984) (the creditor's lien was not perfected, despite the fact that the Tennessee Department of Safety lost the creditor's application for notation of lien).

The primary difference between those cases and this one is the fact that the clerical error in this adversary proceeding does not involve a mistake in the designation of the parties to the transaction, but instead, involves the description of the collateral. In this case, the Defendant is correctly noted on the Certificate of Title as being the first lienholder, whose "date of first security interest" is August 18, 1997. FRENCH AFF. EX. G. Likewise, the Snelsons are correctly listed as the owners of the Mobile Home, which is properly described as a "1998 Fleetwood." FRENCH AFF. EX. G. The problem arises because the VIN shown on the Certificate of Title, TNFLV26AB90331HL21, does not match the correct VIN, TNFLV26AB90331HL13, identified in the Contract, the Bill of Sale, the Manufacturer's Statement, or the Application for Certificate of Title dated July 17, 1997.

> Generally,
>
> [a] mistake made in the notation of the lienholder's name on a certificate of title is not unlike a mistake made in a financing statement filed pursuant to the provisions of the Uniform Commercial Code (UCC). There is authority suggesting that the UCC standard governing mistakes in financing statements should be applied, at least by analogy, to mistakes made in noting liens on certificates of title.

15

*Webb,* 106 B.R. at 520.  The Uniform Commercial Code standard with respect to mistakes, that "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading," TENN. CODE ANN. § 47-9-402(8) (1997), "evidences a policy that substance is preferred over form[.]" *Webb,* 106 B.R. at 521.  Additionally, as long as the financing statement "gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party . . ., gives a mailing address of the debtor and contains a statement indicating the types, or describing the items of collateral[,]" it is sufficient.  TENN. CODE ANN. § 47-9-402(1) (1997).[5]  In other words, if a financing statement reasonably identifies the parties and the collateral, is authorized by the debtor, and is otherwise "sufficiently accurate" such that third parties are put on notice, "minor mistakes . . . on financing statements are not fatal." *Leach,* 206 B.R. at 906.  The purpose of these statutes has been stated as follows:

> Minor mistakes in financing statements are not fatal because . . . [§ 47-9-402] was intended to provide merely a system of notice filing. . . . Thus, even though there may be errors or deficiencies in descriptions, addresses, names, and even signatures, such errors will not destroy the effectiveness of a financing statement so long as they do not frustrate the underlying purpose of the filing requirements in affording notice to creditors of the possible existence of security interests.

*C & J Leasing Corp. v. Waldschmidt (In re Goolsby)*, 284 B.R. 638, 641 (Bankr. M.D. Tenn. 2002) (quoting *Brown v. Belarus Mach., Inc. (In re Serv. Lawn & Power, Inc.)*, 83 B.R. 515, 517 (Bankr. E.D. Tenn. 1988)).

---

[5] As previously discussed, for the purposes of Article 9, "any description of . . . property is sufficient whether or not it is specific if it reasonably identifies what is described."  TENN. CODE ANN. § 47-9-110.

The Certificate of Title clearly identifies the Snelsons and the Defendant as the parties to the security agreement. FRENCH AFF. EX. G. Issuance of the Certificate of Title was authorized by the Debtors, who signed the Application for Certificate of Title on July 17, 1997. FRENCH AFF. EX. B. The Certificate of Title identifies the collateral as a motor vehicle, and in fact, provides enough information to discern that it is a mobile home by listing the make as a "98 Fleetwood." FRENCH AFF. EX. G. This is adequate to put other creditors on notice that a lien exists and that it may be necessary to conduct further inquiry.[6] The fact that the last two numbers of the VIN shown on the Certificate of Title do not match those on the Mobile Home or the Contract is, in the court's determination, a minor error that does not invalidate the Defendant's perfection of its lien in the Mobile Home.[7] *See Assocs. Commercial Corp. v. Lancaster (In re Nunley)*, 21 B.R. 826, 828 n.2 (Bankr. E.D. Tenn. 1982) (holding that, when faced with the issue concerning a "mistake in the serial number shown in the certificate of title[,] a single digit error in a financing statement, absent prejudice, is harmless.").

---

[6] The Department of Safety indexes certificates of title as follows: (1) numerically, along with "all the information required to be set out on the face of the certificate[, including the debtor's name]; (2) by serial or other identifying number; and (3) in any other manner the Department of Safety sees fit. *See* TENN. CODE ANN. § 55-3-111 (1997).

[7] A careful review of the Certified Records from the Department of Safety evidences that the Application for Certificate of Title executed by the Debtors on July 17, 1997, contains the correct VIN. *See* CERTIFIED RECORDS at p.3; *see also* FRENCH AFF. EX. B. The mistake in the VIN was apparently made by the Knox County Clerk's office, on the Application it prepared and sent to the Department of Safety dated August 18, 1997. *See* CERTIFIED RECORDS at p.2. *See also* TENN. CODE ANN. § 55-3-103(a), (d) (1997) (requiring owners of vehicles to make application for registration with the county clerk, who "shall act as the agent of the [Department of Safety] in receiving the application for certificate of title[.]").

This is not a case in which the Defendant was not diligent in applying for and having its lien noted on the Certificate of Title, nor is this a case in which the Contract was entered into within a short amount of time prior to the bankruptcy being filed. The Snelsons entered into the Contract with the Defendant in July 1997, approximately six and one-half years prior to the Debtor's bankruptcy filing. The Defendant applied for and had its lien noted on the Certificate of Title, which evidences a first security interest date of August 18, 1997. The mistake with respect to the last two numbers in the VIN is minor, would not cause substantial confusion, and can easily be reconciled by further inquiry with the Department of Safety. The Defendant holds a valid and properly perfected security interest in the Mobile Home, and as such, the Plaintiff may not avoid the Defendant's lien.

### IV

In summary, based upon the record, the court finds that there are no genuine issues of material fact, and the Defendant is entitled to judgment as a matter of law. Therefore, the Defendant's Motion for Summary Judgment shall be granted, and the Plaintiff's Motion for Summary Judgment shall be denied.

An order dismissing the Complaint will be entered.

FILED: September 13, 2005

                                           BY THE COURT

                                           */s/ RICHARD STAIR, JR.*

                                           RICHARD STAIR, JR.
                                           UNITED STATES BANKRUPTCY JUDGE